```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
WELLS FARGO BANK, N.A.,              :
                                     :
              Plaintiff,             :        09 CV 854 (JSR)
                                     :
         -v-                         :        MEMORANDUM ORDER
                                     :
TIMOTHY L. SHARMA, M.D.,             :
                                     :
              Defendant.             :
------------------------------------ x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/09

JED S. RAKOFF, U.S.D.J.

The instant declaratory action arises out of a dispute over the validity of a Swap Agreement executed by plaintiff Wells Fargo Bank, N.A. and defendant Timothy L. Sharma in February 2007. Plaintiff seeks a declaration that (1) the Swap Agreement is valid and enforceable; (2) defendant lacks the right to rescind or terminate the Swap Agreement; and (3) plaintiff has no obligation to return or refund the amounts paid by defendant pursuant to the terms of the Swap Agreement. On February 27, 2009, defendant moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that no "actual controversy" exists as required by the Declaratory Judgment Act, 28 U.S.C. § 2201, or, in the alternative, that this Court should exercise its discretion to abstain from hearing the action. Defendant also moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. By Order dated April 10, 2009, the Court denied defendant's motion in its entirety, and on May 29, 2009, defendant moved for reconsideration of that order based on "newly discovered evidence." This Memorandum Order sets forth the

reasons for the Court's Order of April 10 and denies defendant's motion for reconsideration.

Over the years, defendant, a Texas resident, borrowed money from Wells Fargo (with the assistance of Charles Calvin, a Wells Fargo banker and Texas resident) to finance various real estate projects. Complaint for Declaratory Relief ("Compl.") ¶¶ 2, 12; Declaration of Defendant Timothy L. Sharma, M.D. ("Sharma Decl.") ¶ 4.[1] In the face of rising interest rates, defendant met with Wells Fargo representatives in Texas to discuss ways to hedge his exposure to increased monthly payment obligations. Compl. ¶¶ 13-14, Sharma Decl. ¶ 5. Interest rate swap transactions were proposed as a way to effectively fix the interest rates for defendant's loans, Compl. ¶ 15, and to this end the parties thereafter entered into an ISDA Master Agreement and Schedule ("the Swap Agreement"), dated February 1, 2007. Id. ¶ 18. The Swap Agreement was executed in Texas, Sharma Decl. ¶ 5, and was supplemented by four transaction confirmations that covered approximately the same notional value as the amount that

---

[1] Both parties have submitted declarations and a variety of exhibits for the Court's consideration. Where, as here, defendant's motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(1), "evidentiary matter may be presented by affidavit or otherwise," Kamen v. Amer. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986), and such materials are thus properly considered by the Court. As to defendant's Rule 12(b)(6) motion, however, the Court considers only the allegations on the face of the Complaint, together with such documents as are incorporated by reference in the Complaint or are necessarily relied upon by plaintiff in bringing this action. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

defendant owed in early 2007 under his variable rate loans. Compl. ¶ 19.

The Swap Agreement is, on its face, governed by New York law, and contains a permissive jurisdiction clause that provides that:

> With respect to any suit, action or proceedings relating to [the Swap Agreement] ("Proceedings"), each party irrevocably: --
>
> (i) submits . . . to the non-exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City, if this Agreement is expressed to be governed by the laws of the State of New York; and
>
> (ii) waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claims that such Proceeding is an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have any jurisdiction over such party.

Id. ¶ 21; Sharma Decl. Ex. 1 at 13; Ex. 2 at 22.

On January 16, 2009, defendant's attorney sent a letter to plaintiff claiming that Wells Fargo "knew that interest rates were peaking when it sold the swaps to Dr. Sharma," but did not disclose its alleged knowledge to defendant. Declaration of Nelson S. Ebaugh ("Ebaugh Decl.") Ex. 2 at 3. Defense counsel also alleged that Wells Fargo falsely stated "that interest rates were going to keep going higher" and "would remain high and would very likely exceed 7.15% for a while." Id. at 2-3. Based on these allegations, defense counsel demanded (1) a cashiers check in the full amount defendant claims to have paid Wells Fargo under the Swap Agreement; or (2) rescission of the Swap Agreement. Id. at 3-4. Defense counsel noted that if Wells

Fargo failed to provide such relief, defendant "may file suit" against Wells Fargo by January 30, 2009. Id. The letter did not, however, state that defendant was ceasing performance under the Swap Agreement; to the contrary, defendant appears to have continued making uninterrupted payments to Wells Fargo under the Swap Agreement. Id.; Sharma Decl. ¶ 7 and Ex. 6.

In response to defense counsel's letter, plaintiff commenced the instant declaratory action on January 29, 2009. The Complaint alleges that a "current dispute" exists between the parties concerning whether (1) the Swap Agreement is valid and enforceable; (2) defendant has the right to rescind or terminate the Swap Agreement; and (3) defendant is entitled to a refund of all payments made under the Swap Agreement. Compl. ¶ 37. Later that same day, defendant filed a petition in Texas state court ("the Texas Action") seeking rescission of the Swap Agreement based on claims for breach of fiduciary duty, negligent misrepresentation, fraud, and violations of the Texas Deceptive Trade Practices Act. Ebaugh Decl. Ex. 3. The instant motion practice then ensued.

With regard to his 12(b)(1) motion, defendant argues that no actual case or controversy exists (and that this Court thus lacks subject matter jurisdiction over the instant action), because defendant has not repudiated the Swap Agreement, and, in fact, has continued to fulfill his obligations under the Swap Agreement. The Court disagrees.

Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to actual "cases and

4

controversies." Aetna Life Ins. Co. V. Haworth, 300 U.S. 227, 239 (1936). The Declaratory Judgment Act, in turn, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act, however, "does not impose a higher threshold for justiciability than the basic Article III requirement that federal courts shall only decide cases and controversies." East/West Venture v. Wurmfeld Assocs., P.C., 722 F. Supp. 1064, 1067 (S.D.N.Y. 1989). Instead, the question in each case brought pursuant to the Act is merely "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

Here, defendant primarily argues that no actual controversy exists (and that plaintiff's claim is not ripe) because plaintiff's Complaint is premised on a claim of anticipatory repudiation, and that no such repudiation has yet occurred. The Complaint itself, however, does not seek a declaration that defendant has repudiated the Swap Agreement. Instead, it seeks a declaration that (1) the Swap Agreement is valid and enforceable; (2) defendant lacks the right to rescind or terminate the Swap Agreement; and (3) plaintiff has no obligation to refund funds paid pursuant to the terms of the Swap Agreement. Compl. ¶ 41. As noted, defendant presently contends

5

that he has the right to rescind the Swap Agreement, and previously demanded the return of monies paid pursuant to that agreement. Moreover, the pending Texas Action initiated by defendant similarly seeks "rescission of the swap agreements." Taken together, these facts demonstrate that defendant has amply called into question the enforceability of the Swap Agreement, thus giving rise to an actual controversy between the parties. Courts in this Circuit regularly permit such declaratory judgment actions to proceed. See, e.g., Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 562 (2d Cir. 1991) ("A declaratory judgment action . . . was properly commenced in light of the real threat of litigation"); In re Metiom, Inc., No. 01-12840, 2002 WL 433588, at *3-4 (S.D.N.Y. Feb. 25, 2002); (actual controversy exists where "[t]he positions of the two parties as to payments due and payable [under a promissory note] are diametrically opposed"); Gilbert, Segall and Young v. Bank of Montreal, 785 F. Supp. 453, 459 (S.D.N.Y. 1992) (allegation of desire and intent to vacate premises leased to plaintiff gave rise to an actual controversy); Salomon Bros., Inc. v. Carey, 556 F. Supp. 499, 502 (S.D.N.Y. 1983) (even though declaratory judgment action was commenced after receipt of a good faith letter to settle, actual controversy existed for declaratory judgment); Brooks v. Flagg Bros., Inc., 63 F.R.D. 409, 413 (S.D.N.Y. 1974) (the risk that certain pieces of furniture might be sold in the future created an "actual controversy" for purposes of declaratory relief); cf. MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 137 (2007) ("We hold that petitioner was not required, insofar as Article III is concerned, to break or

6

terminate its 1997 license agreement before seeking a declaratory judgment in federal court that the underlying patent is invalid, unenforceable, or not infringed"); Amer. Mach. & Metals, Inc. v. De Bothezat Impeller Co., 166 F.2d 535 (2d Cir. 1948) (permitting plaintiff to seek a declaration "with respect to the proper interpretation and effect" of license agreement, even though plaintiff had not yet given notice of termination).

Defendant also argues that plaintiff's Complaint, in essence, amounts to an improper attempt to preemptively use the Declaratory Judgment Act to obtain a declaration of non-liability as to defendant's tort claims. See, e.g., Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 426-27 (S.D.N.Y. 2002) (noting that the Declaratory Judgment Act was not intended to be applied "for a tactically preemptive purpose of declaring non-liability so as to guard against a tort action"). The instant action, however, does not merely involve a garden variety tort claim, but instead a dispute over the validity and enforceability of a contract that, in turn, depends on the resolution of defendant's breach of fiduciary duty and fraud claims. In such circumstances, invocation of the Declaratory Judgment Act — which permits litigants to seek resolution of "actual controversies" — is both appropriate and entirely consistent with the Second Circuit's observation that "a declaratory judgment action should be entertained when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Fort

7

Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir. 1986) (citations omitted); see Dow Jones, 237 F. Supp. 2d at 426 ("there are circumstances in which anticipatory judgments of non-liability may be appropriate under the DJA, particularly in regards to claims asserting unaccrued or undefined rights or obligations arising under contractual relations such as insurance and intellectual property").

In Salomon Brothers, for instance, the parties entered into a written agreement pursuant to which plaintiff agreed to act as defendant's broker in the purchase and sale of securities. 556 F. Supp. at 500. Defendant's attorney thereafter sent a letter to plaintiff stating that defendant had certain claims against plaintiff with respect to its handling of defendant's account, arising out of plaintiff's alleged breach of contract and breach of fiduciary duty. Id. The letter stated that its purpose was to initiate settlement negotiations and avoid litigation, but plaintiff nevertheless commenced a declaratory judgment action. Id. Chief Judge Motley held that the action was cognizable under the Declaratory Judgment Act, concluding that "there is a substantial controversy between the parties with respect" to plaintiff's performance under the agreement, and that "an actual controversy exists between the parties with respect to the fiduciary duties owed by [plaintiff] to [defendant]. The parties here have sharply adverse legal interests since [defendant] asserts legally cognizable claims sounding in contract and agency law and [plaintiff] asserts a number of defenses denying liability for any damages." Id. at 501; see also St. Paul Fire &

Marine Ins. Co. v. Heath Fielding Ins. Broking, 91 Civ. 0748, 1993 U.S. Dist. LEXIS 7066, at *21 (S.D.N.Y. May 25, 1993) ("Whether the Contract is enforceable or whether it is null and void is a point of present contention"). In short, because the legal relation between the parties is uncertain, and a judgment in this action would clarify and settle any uncertainty, insecurity, or controversy surrounding the validity and enforceability of the Swap Agreement, Fort Howard Paper Co., 787 F.2d at 790, the instant declaratory judgment action may stand.

Second, and in the alternative, plaintiff argues that the Court should exercise its discretion to abstain from hearing this action because there is another suit between the same parties pending in state court and presenting the same issues. See Wilton v. Seven Falls Co., 515 U.S. 277 (1995); Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942).

It is undisputed that the Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton, 515 U.S. at 286. In determining whether to abstain from hearing a declaratory judgment action when there is a parallel state court action, a court must inquire into whether "the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." Brillhart, 316 U.S. at 495. Although the Supreme Court has declined to delineate the outer bounds of that discretion, id., relevant factors include, inter alia, (1) whether

the claims of all interested parties can be adjudicated in the parallel state proceeding; (2) whether all necessary parties have been joined; (3) whether those parties are amendable to proceed in that proceeding; (4) whether the case involves any federal questions of law; (5) avoiding duplicative proceedings; (6) forum shopping; (7) the relative convenience of the fora; and (8) the order of filing. Commercial Underwriters Ins. Co. v. Glowmaster Corp., 105 F. Supp. 2d 268, 270 (S.D.N.Y. 2000); Travelers Indem. Co. v. Philips Elec. N. Amer. Corp., 02 Civ. 9800, 2004 WL 193564, at *2 (S.D.N.Y. Feb. 3, 2004); see Brillhart, 316 U.S. at 495. This inquiry "does not rest on a mechanical checklist," however, but instead "on a careful balancing" of these factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983).

Here, both parties offer a variety of arguments as to why certain factors weigh in favor of, or against, abstention. It is undisputed, however, that when defendant entered into the Swap Agreement, he irrevocably submitted "to the non-exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan," and irrevocably "waive[d] any objection which [he] may have at any time to the laying of venue of any Proceedings brought in any such court." Sharma Decl. Ex. 1 at 13. Thus, in the end, defendant's arguments in favor of abstention amount to nothing more than an impermissible attempt to circumvent his clear and unequivocal waiver and consent to the jurisdiction of this Court. Although some factors may weigh

slightly in favor of permitting this dispute to be litigated and resolved solely in Texas state court, the instant action nevertheless has achieved joinder of all necessary parties and claims, the parties' claims and defenses do not present novel or complicated questions of state law, and there is no reason to believe that this action cannot result in the timely adjudication of all such claims. In such circumstances, and in light of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976), defendant has failed to demonstrate that permitting this declaratory judgment action to proceed would in any way thwart "the interests of justice" or prevent the parties from obtaining "an adequate and effective judgment." Alabama State Fed'n of Labor v. McAdory, 325 U.S. 450, 462 (1945). Accordingly, the Court declines to exercise its discretion to abstain from hearing the instant action.

In moving for reconsideration, defendant argues that the Swap Agreement is subject to a purportedly newly discovered Loan Modification Agreement that contains a Texas choice-of-law provision, which, in turn, somehow requires this Court to reconsider its prior order denying defendant's motion to dismiss.[2] Initially, however, it

---

[2] Oddly, defendant never articulates why the Texas choice-of-law provision (if applicable) requires this Court to reconsider its previous Order, other than noting his apparent preference for Texas law as opposed to New York law. As noted above, however, this action does not present novel or complicated questions of state law, and the mere applicability of Texas law, standing alone, does not come close to warranting abstention. In a similar respect, neither party addresses the impact that the

11

should be noted that while the Court has no power to deny a litigant the right to <u>file</u> a motion for reconsideration, that does not mean that the Court may not deny such a motion on procedural grounds, as well as substantive grounds.

As to procedure, Local Civil Rule 6.3 — which defense counsel fails to even mention in his moving papers — requires such motions to be "served within ten (10) days after the entry of the court's determination of the original motion." S.D.N.Y. Local Civil Rule 6.3. Here, it is undisputed that defendant filed and served the instant motion for reconsideration 49 days (34 business days) after the Court originally denied defendant's motion to dismiss. For that reason alone, defendant's motion is properly denied. <u>See</u>, <u>e.g.</u>, <u>Grand River Enters. Six Nations, Ltd. v. King</u>, 02 Civ. 5068, 2009 U.S. Dist. LEXIS 52600, at *52 (S.D.N.Y. June 16, 2009) ("A party's failure to make a motion for reconsideration in a timely manner is by itself a sufficient basis for denial of the motion").

Local Civil Rule 6.3 further requires a party moving for reconsideration to "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked," S.D.N.Y. Local Civil Rule 6.3; "matters, in other words, that might reasonably

---

Texas choice-of-law provision could have on the Swap Agreement's permissive jurisdiction clause, which, as noted, is applicable only if the Swap Agreement "is expressed to be governed by the laws of the State of New York." The Swap Agreement, however, is on its face governed by New York law (as noted above), the Loan Modification Agreement's Texas choice-of-law provision has no bearing on the Swap Agreement (as discussed below), and, in any event, nothing before the Court demonstrates that the parties intended to abandon their mutual agreement to consent to the jurisdiction of this Court.

be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Although newly discovered evidence can form the basis of a motion for reconsideration, the moving party must demonstrate that it was "excusably ignorant of the facts despite using due diligence to learn about them." Fields v. Merrill Lynch, 03 Civ. 8363, 2004 WL 626180, at *2 (S.D.N.Y. March 30, 2004); see System Mgmt. Arts Inc. v. Avesta Tech., Inc., 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000) ("[a] motion for reconsideration is not the proper avenue for the submission of new material") (citations omitted). Here, defendant has failed to point to any controlling decision or piece of evidence that the Court overlooked in denying defendant's motion. Instead, defendant merely relies on a document that, although "recently discovered" by defense counsel, has been in defendant's possession since he executed the agreement in April 2007. In such circumstances, defendant cannot now argue that the Loan Modification Agreement can serve as a proper basis for a motion for reconsideration, and thus, again, is a reason to deny the motion.

Moreover, even on the substantive merits, defendant's motion fails.

The Loan Modification Agreement provides, in part, that "[t]his Agreement and the other Loan Documents shall be governed by and interpreted in accordance with the laws of the State of Texas." Supplemental Declaration of Defendant Timothy L. Sharma, M.D. ("Sharma Supp. Decl.") Ex. H, ¶ 7. "Other Loan Documents," in turn, are defined as "[t]he Notes, Deed of Trust, Second Lien Deed of

13

Trust, Loan Agreement, this Agreement, the other documents described in the Loan Agreement as "Loan Documents," together with all modifications and amendments thereto." Id. ¶ G.

Nothing on the face of the Loan Modification Agreement or the Loan Agreement itself, however, indicates that the Texas choice-of-law provision governs the Swap Agreement. Indeed, to the contrary, neither document defines the Swap Agreement as a "Loan Document," see id.; Ex. A at 45-46, nor does the Loan Modification Agreement (which contains the Texas choice-of-law provision) make any reference to the Swap Agreement or any transactions under that Agreement. Id. Ex. H. When considering a contract, "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." Vt. Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475 (2004) (citation and quotation omitted). Here, in the face of the clear and unambiguous language of the Loan Modification Agreement and the Swap Agreement's New York choice-of-law provision, this Court "is not free to alter" these contracts in order "to reflect its personal notions of fairness and equity." Greenfield v. Philles Records, 98 N.Y.2d 562, 570 (2002).

In arguing that the Swap Agreement should be considered a "Loan Document" governed by the Texas choice-of-law provision, defendant relies on BKB Properties, LLC v. Suntrust Bank, which held that, under Tennessee law, a loan and swap agreement "must be construed together as the agreement between the parties." 08 Civ. 529, 2009 WL 529860, at *5 (M.D. Tenn. March 2, 2009). The court's

14

conclusion in that respect, however, was based on the fact that the original loan and swap agreement were part of the same transaction and executed on the same day, id. at *4, and that by its "express terms, the Loan Agreement not only reference[d] the Swap Agreement and other swap documents, but, in fact, designate[d] those documents as among the 'Construction Loan Documents' to which a number of the agreement's provisions refer[ed]." Id. at *5. Here, by contrast, the Loan Modification Agreement was not executed contemporaneously with the Swap Agreement, compare Sharma Supp. Decl. Exs. B&C with id. Ex. H, and, as noted, neither the Loan Modification Agreement nor the original Loan Agreement make any reference to the Swap Agreement. Although defendant argues that the Swap Agreement and Loan Agreement are cross-collateralized and cross-defaulted, those facts, standing alone, fail to overcome the clear and unambiguous language of the parties' contracts. Cf. In re Spiegel, Inc., No. 03-11540, 2005 WL 440321, at *3 (Bankr. S.D.N.Y. Feb. 18, 2005) ("the Term Loan Agreement is devoid of any references to a swap agreement, therefore, the Debtors are not responsible for 'breakage costs' associated with such an agreement").

Accordingly, for all of the foregoing reasons (any one of which is alone sufficient), defendant's motion for reconsideration must be denied.[3]

---

[3] The Court emphasizes, however, that it need not (and does not) resolve all choice-of-law questions at this time. It does note, however, that "[u]nder New York law, . . . tort claims are outside the scope of contractual choice-of-law provisions," Finance One Pub. v. Lehman Bros. Special Financing, 414 F.3d 325, 333 (2d Cir. 2005), thus indicating that "interest analysis" may

Turning finally to defendant's 12(b)(6) motion, , defendant argues that the Complaint, in essence, amounts to a demand for adequate assurance of performance, see Compl. ¶ 41, and that this doctrine is not applicable to a credit default swap. See, e.g., Merrill Lynch In'tl v. XL Capital Assurance Inc., 564 F. Supp. 2d 298, 306 (S.D.N.Y. 2008) (concluding that "New York would not extend the doctrine of adequate assurance" to credit default swaps).

Defendant's argument in this respect, however, rests on a fundamental misreading of plaintiff's Complaint.  Under the Uniform Commercial Code (adopted both in New York and in Texas), "[w]hen reasonable grounds for insecurity arise with respect to the performance of either party[,] the other may in writing demand adequate assurance of due performance." N.Y. U.C.C. § 2-609, Tex. Bus. & Com. Code § 2.609; see Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp., 92 N.Y.2d 458, 462-463 (1998) (noting that the roots of the doctrine "spring from the doctrine of anticipatory repudiation," and that pursuant to that "familiar precept, when a party repudiates contractual duties 'prior to the time designated for performance and before' all of the consideration has been fulfilled, the 'repudiation entitles the nonrepudiating party to claim damages for total breach'") (citations omitted).  Here, though, the Complaint, at least on its face, makes no express demand for adequate assurance of performance under the Swap Agreement, nor is there any allegation that defendant has stopped performing under that

---

be necessary in order to determine the law governing defendant's tort claims.

agreement. Indeed, as already noted, the Complaint merely seeks a declaration concerning the parties' rights under the Swap Agreement and clarity concerning its enforceability. In short, because the Complaint does not seek adequate assurance of future performance from defendant, defendant's 12(b)(6) motion must also be denied.

Accordingly, for all of the foregoing reasons, the Court hereby reaffirms its prior order denying defendant's motion to dismiss, and hereby denies defendant's motion for reconsideration. The Court also denies plaintiff's application for attorney's fees. The Clerk of the Court is directed to close document number 35 on the Court's docket.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       July 28, 2009